[No. 17868.   Department Two.   October 2, 1923.]

## C. A. PAYNE, *Appellant*, v. WHITE SWAN AUTO COMPANY et al., *Defendants*, W. G. BOLAND, *Intervener, Respondent.*[1]

CORPORATIONS (205)—INSOLVENCY—CONVEYANCES WHEN INSOLVENT. Mortgages given by an insolvent corporation without consideration moving to it are voidable as to creditors or as to a trustee in bankruptcy.

CHATTEL MORTGAGES (64, 81)—FORECLOSURE—EXERCISE OF POWER OF SALE—OPERATION AND EFFECT—COLLATERAL ATTACK ON SHERIFF'S SALE. The due foreclosure by notice and sale of chattel mortgages given without consideration by an insolvent corporation, the mortgages being merely voidable at the suit of creditors, has the effect of *res judicata*, the purchaser taking all the title the mortgagor had, and the sale cannot be collaterally attacked and the property recovered for creditors on the ground of want of consideration for the mortgages.

Appeal from a judgment of the superior court for Yakima county, Gilliam, J., entered September 20, 1922, upon findings in favor of an intervener, in an action to foreclose real and chattel mortgages, after a trial to the court. Affirmed in part and reversed in part.

*Fred L. Rice*, for appellant.

*E. H. Kohlhase*, for respondents.

FULLERTON, J.—The White Swan Auto Company is a corporation, organized under the laws of the state of

[1]Reported in 219 Pac. 32.

Washington. Its capital stock is divided into seven · thousand five hundred shares, of the par value of one dollar each. On December 19, 1919, C. A. Payne and Camilla Payne, his wife, owned and held five thousand of such shares; the remaining two thousand five hundred being then owned by one King. Payne and wife were the officers and managers of the corporation. On that day, they sold their stock to Thomas Thompson, S. M. Thompson and Emery Saffold, for the sum of $6,500. Of this sum, the purchasers paid $2,500 in cash, and gave their promissory notes for the remainder. In carrying out the sale, Payne and wife surrendered their certificates of stock to the corporation for cancellation, and Payne thereupon issued new certificates to the purchasers for a like amount, and surrendered to them the management of the corporation.

To secure the payment of the notes, the purchasers assigned to C. A. Payne the certificates of stock issued to them. The certificates, however, were not delivered directly to Payne. By an escrow agreement, the notes and certificates were deposited in a bank to whom payments were to be made, and were to be returned to the purchasers when the notes were paid. These notes were five in number, for varying amounts, and became due on different dates.

None of the notes were paid; and on August 4, 1921, a new arrangement was made for the payment of the debt represented by them. On that date, Payne surrendered the notes and the certificates to the purchasers, and took the note of the corporation for the indebtedness. The note was secured by two mortgages, executed by the corporation, the one covering its personal property and the other its real property. The note provided for monthly payments of one hundred dollars each. Default was made in these payments; and in April, 1922, Payne began a foreclosure of the

· chattel mortgage under the procedure known as notice and sale. The sale was not contested by any person interested in so doing, and a sale of the property was had on April 11, 1922; Payne, the mortgagee, purchasing the property at such sale for the sum of $796.50.

Subsequently, Payne began the present action to foreclose both the real and the chattel mortgage for the amount of the balance of the note. The chattel mortgage was so drawn as to cover after-acquired property, and it was to reach this property that another foreclosure of that mortgage was sought. Pending the foreclosure action, the corporation was adjudged a bankrupt, one W. G. Boland was elected as its trustee in bankruptcy, and he, by leave of court, intervened in the action as the representative of the creditors of the corporation. In his pleadings, he set up the facts showing the consideration for the execution of the note and mortgage, claiming that the note and mortgages were void as to creditors for want of consideration, and that the sale of the personal property of the corporation was likewise void and passed no title to the purchasers. The relief sought was that the note and mortgages be held for naught, the mortgages be canceled of record, and that Payne be required to deliver to him the personal property purchased at the foreclosure sale; or, in case delivery could not be had, that he have judgment against him for $2,000, which sum he alleged to be its value. After issue joined on the intervener's complaint, a trial was had before the court sitting without a jury, which resulted in a judgment in accordance with the prayer of the intervener's complaint. Payne appeals.

With the holding of the court as to the right of the mortgagee to foreclose the mortgages, we are constrained to agree. The mortgages were without consideration moving to the corporation, and while pos-

sibly valid as to the corporation and valid as to its trustees and stockholders consenting to their execution, they were, before foreclosure, voidable at the suit of the creditors of the corporation. And, since the trustee in bankruptcy can avoid any conveyance which the creditors of the bankrupt could avoid, the trustee was within his rights in interposing the defense of want of consideration to the appellant's action to foreclose.

But we think the court in error in its judgment awarding to the trustee a recovery of the personal property sold under the foreclosure of the chattel mortgage. The mortgage was at most voidable, not void, still less did the grounds upon which it could be avoided appear on the face of the instrument. A foreclosure by notice and sale is in the nature of a judicial proceeding. When regularly conducted, by the express terms of the statute, the purchaser of the mortgaged property takes all the interest the mortgagor had therein. (Rem. Comp. Stat., § 1108 [P. C. § 9755].) The foreclosure, therefore, has all the effect of *res judicata* that it would have were the foreclosure conducted by suit in court and the property sold under a decree entered to that effect. To state the proposition in another way, such a foreclosure proceeding is not subject to collateral attack. The attack on the foreclosure proceedings made by the trustee in this instance is collateral. He sought to nullify the proceedings by showing by extrinsic evidence that the debt for which the mortgage was given to secure was not the debt of the corporation. This, while open to him prior to a foreclosure of the mortgage, is not open to him after that event. The question of the validity of the mortgage then becomes a question adjudicated, and the attack upon it must be made under some of the forms of procedure provided for a review of judicial action.

The judgment is reversed in so far as it awards a recovery of the personal property, and the cause is remanded to enter a judgment in accordance with this opinion.

MAIN, C. J., TOLMAN, PARKER, and PEMBERTON, JJ., concur.