[No. 16582. *En Banc.* July 22, 1921.]

A. D. Whitney, *Plaintiff,* v. Page & Bolster Shingle Company, Incorporated, *Defendant.*

Mill and Mine Supply Company, *Plaintiff,* v. Page & Bolster Shingle Company, Incorporated, *et al., Defendants.*[1]

Master and Servant (20-1)—Workmen's Compensation Act—Premiums—Liens For—Priority. Under Rem. Code, § 6604-8 (as amended by Laws 1917, ch. 120, § 5) providing that claims for industrial insurance premiums, in all cases of insolvency of the employer, shall have priority over all other claims except taxes, the state's claim for such premiums has priority over labor liens given to workmen by the provisions of Rem. Code, § 1152 *et seq.*

Appeal from an order of the superior court for King county, Gilliam, J., entered February 15, 1921, decreeing distribution of proceeds of a receiver's sale in favor of lien creditors, in preference to the state's claim for industrial compensation. Reversed.

*The Attorney General, John H. Dunbar, Assistant,* and *M. H. Wight,* for appellant.

*A. D. Martin, W. G. Beard,* and *Alexander, Bundy & Swale,* for respondents.

Holcomb, J.—In 1920, the defendant, Page & Bolster Shingle Company, was operating a small sawmill. On October 6, 1920, it became insolvent and ceased operat-

[1]Reported in 199 Pac. 728.

ing. At that time it had on hand approximately 325,000 feet of lumber, and was indebted to plaintiff Whitney and other employees in excess of $3,000 for wages in the operation of the mill. On October 19, the plaintiff Whitney and other employees filed liens against the lumber under the provisions of Rem. Code, § 1152 *et seq.* These liens were assigned to plaintiff Whitney, who commenced the first of the above entitled consolidated cases for their foreclosure. Subsequently the plaintiff Mill & Mine Supply Company commenced the second of the consolidated cases for the appointment of a receiver, and respondent Gordon was appointed as such receiver. Later the two cases were consolidated, and the order of consolidation provided that plaintiff Whitney be permitted to foreclose his liens in the consolidated action, and that the respondent Gordon, as general receiver, act also as receiver in the lien foreclosure action.

Under an order of the court, the receiver sold the lumber for the sum of $2,000, which was less than the amount of the lien claims. The receiver applied to the court for an order for the distribution of the proceeds and upon hearing thereon, appellant, state of Washington, urged that its claim for compensation should be paid out of the proceeds in preference to the lien claims. The lower court held that the lien claims were entitled to the proceeds of the lumber, and an order was entered to that effect, from which the state has appealed.

The sole question in this appeal is as to the relative priority between the lien claims for labor and the claim for industrial insurance premiums filed in the insolvency proceedings in this action in the superior court. Appellant bases its claim of priority as against the labor claims upon the amendment of 1917 to § 6604-8, Rem. Code. (Laws of 1917, ch. 120, p. 487, § 5.) The amendment provides:

"In all cases of insolvency, assignment for the benefit of creditors, or bankruptcy, the claim of the state for payments due herein shall be a claim prior to all other claims except taxes. . . . ."

Respondent does not question but that the state has the power to provide that any claim of the state shall be entitled to priority, as against any other class of claims, but contends that the state is not entitled to such priority in the absence of an express enactment to that effect as against a specific lien.

It is contended by respondent that in the case of *Scandinavian American Bank v. King County,* 92 Wash. 650, 159 Pac. 786, we decided this question against appellant's contention, where we said:

"The state has an undoubted power to create a priority of lien in aid of its taxing power, but the general rule is that such priority will not be indulged unless sustained by some positive statute; it will not be sustained by resort to construction."

That case was one passing upon the question of whether a delinquent personal tax is a lien upon real property owned by the tax debtor at the time the tax was levied, but which was subject to a voluntary lien, or had been conveyed to another prior to the time the county treasurer selected real property to be charged with the delinquent tax, and noted the tax upon the tax roll. We, in effect, held that under the statutes governing that case it would be necessary to resort to construction to hold that real estate which had not been designated by the county treasurer upon which to impose the lien of unpaid delinquent personal property tax prior to the time the real estate had passed from the hands of the taxpayer to another, unaffected by any lien imposed thereon for delinquent personal taxes, and that we could not do so. We further said in that case:

"The very terms of the statute compel the conclusion that the tax is not a lien generally upon all prop-

erty, but only upon such as may be thereafter specifically selected and charged. For the treasurer may not select and charge all real property arbitrarily, but shall 'select some particular tract or lots, etc.' (§ 9245).''

That case is not applicable here. Cases are cited and discussed from other states, but we must determine this upon our own statutes.

In addition to the portion of § 5, ch. 120, p. 487, Laws of 1917, heretofore quoted, that section also provides:

''In case of refusal or failure after written demand personally served to furnish such bond, the state in an action brought by the attorney general in its name shall be entitled to an injunction restraining such delinquent from prosecuting an extra hazardous occupation or work until such bond shall be furnished, and any sale, transfer or lease attempted to be made by such delinquent during the period of such default, of his works, plant or lease thereto shall be invalid until all past delinquencies are made good and such bond furnished. . . .''

The above provisions, in connection with the provisions first quoted, positively create a lien paramount and superior to any other lien *or claim* except for taxes. The exception alone excludes any other construction.

Respondent asserts that this is not a case of insolvency; that, so far as the fund in controversy is involved, it is a fund in the custody of the receiver, arising and to be distributed in the foreclosure action, and not in the general receivership action.

We are of the contrary opinion. This is a case of insolvency, the debtor having been declared insolvent and the receiver was appointed receiver of all the property.

The language of the statute (amendment of 1917) is clear and explicit in such cases, that the claim of the state shall be prior to all other claims except taxes, and there is no room for construction. To hold other-

wise might seriously impair and deplete the industrial insurance funds which it was evidently the object of the legislature in enacting the amendment to avoid.

The judgment of the lower court is reversed.

PARKER, C. J., MITCHELL, TOLMAN, FULLERTON, MAIN, MACKINTOSH, and BRIDGES, JJ., concur.